



-WOHEHIV-
The Morning Star

# NORTHERN CHEYENNE TRIBE

## ADMINISTRATION

P.O. Box 128
LAME DEER, MONTANA 59043
(406) 477-6284
FAX (406) 477-6210

Via Email and Certified Mail
May 10, 2022

Bryan Newland, Assistant Secretary – Indian Affairs
1849 C Street NW
Washington, D.C. 20240
Bryan_newland@ios.doi.gov

> Re:   Northern Cheyenne Tribe's Final Request for Immediate Action on Law
>       Enforcement

Assistant Secretary Newland,

On behalf of the Northern Cheyenne Tribe, I write to offer one final opportunity for the United States to address its longstanding failures to provide adequate and effective law enforcement services on our Reservation, which is the United States' solemn duty under applicable law.  If we do not see prompt action as specified below by the Bureau of Indian Affairs – Office of Justice Services, the Northern Cheyenne Tribe plans to file suit to require the United States to meet its obligations to our Tribe.

We regret that we are at this point, but the stakes are very high for our people who are suffering on a daily basis because criminal laws are not being enforced, and drug-related crime is rampant. Local business owners have resorted to self-help measures, including one owner spending $100,000 on security to deal with crime on or near its premises.  The Tribe itself has spent over $1,000,000 on its own security detail to attempt to bridge the gaps in BIA's service. Without your action on our reasonable requests, the safety, health and welfare of those within our Reservation remain at risk.

For over three years, we have spent countless hours pleading with national, regional and local Department of Interior officials to address the law enforcement crisis on our Reservation.  Since late 2018 we asked you, your predecessor and the BIA-OJS Director at least ten times for BIA-OJS to address our law enforcement crisis.[1]  Unfortunately, BIA-OJS has not taken definitive action

---

[1] The demands made in this letter have been made consistently over the last three years.  At the highest levels of DOI, this includes: 12/28/18 letter from Northern Cheyenne Tribe to Associate Director Addington; 3/11/19 meeting with Assistant Secretary Sweeney and Addington; 3/22/19 letter from Tribe to Sweeney and Addington; 11/22/19 letter to Sweeney; 8/7/20 letter to Sweeney; 9/9/20 call with

LITTLE WOLF AND MORNING STAR - Out of defeat and exile they led us back
to Montana and won our Cheyenne homeland that we will keep forever.

to ensure a full staff of trained, competent police officers on our Reservation, has not improved the totally inadequate response to crime, and has not opened to full capacity the Lame Deer Adult Detention Center (LDADC) or the Rocky Mountain Regional Detention Facility (RMRDF) in Hardin, MT.  Consequently, we understand the United States to have taken final agency action on these matters.

As described in many prior communications with you and your predecessor and to many BIA-OJS officials in other meetings and letters, **we need the following concerns addressed now**:

1.  <u>Fully and Effectively Staff the Local Police Department and Drug Enforcement</u>.  For years, BIA-OJS has assigned an inadequate number of officers to our Reservation.  As you can see from one such weekly report (from March 2022, attached), BIA-OJS believes that full staffing of the Tribe's police department would be 25 officers.  Even with 21 "hired" officers, according to our information BIA only has 2 patrol officers on duty most times.  Obviously, this is not adequate to serve our 444,000-acre Reservation, which has five communities, many outlying settlements, and many law and order challenges.  This is evident in the serious lack of responsiveness from BIA law enforcement.  When Tribal members and businesses call 9-1-1 for assistance, it can take hours for an officer to arrive, if one arrives at all.  When individuals complain to BIA dispatch about officers not showing up, dispatch regularly treats them rudely and refuses to give them the names of the on-duty officers.

Drug use and abuse are rampant and seem to be at the root of most crime.  For two years, no drug enforcement officers were assigned to Northern Cheyenne, and when the Tribe attempted to contract a drug enforcement officer position via the Indian Self-Determination and Education Assistance Act, BIA refused.  Just recently, BIA hired two drug enforcement officers based in Billings, but these officers have been detailed away a portion of the time since they were hired.  Multiple local business managers informed us that they frequently find illegal drugs and drug paraphernalia "lost" on their premises, including in at least one instance, a "large" baggie of what appeared to be methamphetamine.  When they've called BIA to report the finds, BIA has refused to take custody of the contraband, instead instructing them to "throw it in the trash."  The vast majority of persons held in BIA custody on Tribal Court charges are being held or serving time for drug-related crimes, including property crimes and crimes against persons committed while under the influence.  It is crucial that BIA stop detailing out the two drug enforcement officers recently hired and assigned to the Northern Cheyenne Reservation so that they can focus their efforts exclusively on Northern Cheyenne, which is badly needed after two years of a complete lack of drug enforcement officers on our Reservation.

**Immediately assign more patrol officers to Northern Cheyenne on a permanent basis so that every shift is appropriately staffed with qualified and competent officers patrolling (at least**

---

Sweeney; 4/7/21 letter to Assistant Secretary Newland; 5/10/21 letter to Newland; 5/14/21 call with Associate Director O'Neal; 10/26/21 meeting with Newland.

**4 patrol officers at all times), not including supervisory officers, dispatch or detention personnel; ensure proper responsiveness to maintain law and order; and stop detailing away Northern Cheyenne-assigned drug enforcement officers.**

2. <u>Fully Open the Local Jail</u>.  While we appreciated OJS' and BIA Facilities' efforts to open LDADC as a temporary hold facility, its utility is limited because the LDADC will only accept up to nine intoxicated individuals and hold them for only eight hours.  On February 1, 2022, BIA-OJS informed the Tribe that "[t]here are no plans to further renovate or open the facility beyond a temporary hold status for intoxication charges."  This is unacceptable.  Without a full-functioning local facility to hold people who have been arrested or convicted, police are hesitant to arrest anyone, our Tribal Court programs cannot be effective, and public safety is greatly compromised.  The lack of a local detention facility has cascading effects that lead to more crime and unrest in the community.

One of the key programs the Tribe has developed to deal with drug-related crime is the Tribal Court's Healing to Wellness (H2W) program to combat drug-related recidivism.  This program is funded by a U.S. Department of Transportation grant and has had some success.  But individuals participating in the H2W program must appear in person at the Tribal Court in Lame Deer at least once a week and need access to rehabilitative services.  It has proven difficult to get H2W participants through the program because the local Lame Deer jail closed and individuals are now incarcerated in Hardin or in BIA-contracted facilities in Oklahoma.  Remarkably, about half of Tribal Court detainees are being held in Oklahoma facilities, approximately 1,000 miles away.  BIA runs transports between Oklahoma and Montana only once per month; thus, any detainees held in Oklahoma cannot participate in the H2W program.

Likewise, there remain significant issues with BIA failing to arrest and detain suspects.  As recently as March, BIA officers have continued to drop off people suspected of committing crimes at the Lame Deer homeless shelter instead of arresting and detaining them.  At least one such person was evidently intoxicated, and thus properly should have been detained for an eight-hour hold at the local Lame Deer detention facility.  It is not clear why BIA officers instead left that person at the homeless shelter (which is immediately across the street from the jail), endangering children, families, and staff residing at the shelter.  It is inappropriate for BIA to use or treat the Tribe's homeless shelters as substitute detention centers.

**Open the local Lame Deer detention facility to full capacity.**

3.  <u>Increase to Full Capacity the Regional Detention Facility and Provide Promised Services</u>.  Similarly, the RMRDF in Hardin, MT (two hours' drive roundtrip from Tribal headquarters in Lame Deer), has been open for three years, but is operating at approximately only 25% of its full capacity of 400 detainees.  This has a direct effect on our Reservation because, without a fully operational RMRDF, perpetrators are not arrested and detained, and more crime occurs.  Of those who are arrested and detained, the lack of capacity at RMRDF means many are sent far away to contracted facilities in Oklahoma where they are cut off from family and culture, unable to

Letter to Assistant Secretary - Indian Affairs
May 10, 2022
Page **4** of **4**

participate in Tribal rehabilitative programs like H2W, and often end up being held beyond their sentences in violation of their civil rights due to the excessive distance and lack of transport.

Recidivism has also likely increased as a result of RMRDF's deficiencies because the social and rehabilitative services that were supposed to be provided at RMRDF are not available. Addiction support programming, mental health counseling, and even legal assistance are reportedly lacking or entirely absent. Our Tribal Court cannot serve its purpose or function properly if Tribal detainees are left to languish. Our community continues to suffer when offenders return only further hardened and emboldened by their corrections experience at RMRDF.

**Open the RMRDF to its full capacity and ensure that the facility provides the full set of social, medical and rehabilitative services promised by BIA.**

We expect your prompt attention and material action on these pressing public safety matters. If BIA-OJS does not address these issues within 60 days of this letter, the Tribe plans to file suit in federal court to obtain court orders requiring BIA-OJS to meet its obligations. In the meantime, I am available to discuss how these obligations can be met.

Sincerely,

*Serena K. Wetherelt*

Serena Wetherelt
Tribal President

pc:   U.S. Senator Jon Tester
      U.S. Senator Steve Daines
      U.S. Representative Matt Rosendale
      Northern Cheyenne Tribal Council
      Tribal Attorneys
      Darryl LaCounte, Director, BIA (darryl.lacounte@bia.gov)
      Jason O'Neal, Director, BIA-OJS (Jason.Oneal@bia.gov)
      Susan Messerly, Regional Director, Rocky Mountain Region (Susan.Messerly@bia.gov);
      Sandra Two Two, Acting Spt, Northern Cheyenne Agency (Sandra.TwoTwo@bia.gov);
      Natalie Landreth (Natalie.Landreth@sol.doi.gov)
      Kristen Guerriero (Kristen.Guerriero@sol.doi.gov)
      Maria Wiseman (Maria.Wiseman@bia.gov)

# Bureau of Indian Affairs

## Briefing Report

Date: 03/29/2022

**Title:  BIA Office of Justice Services Weekly Briefing Report**

**BIA Agency:**  BIA Northern Cheyenne Agency

**Week of:**  Sunday – Saturday, March 20, 2022 to March 26, 2022

**Background:**  The BIA OJS Field Operations Division provides a weekly Public Safety briefing to Tribal Leadership to enhance communication, develop partnerships, and develop crime prevention strategies to address crime, fear of crime, and quality of life issues.

**Details:**

1. BIA Uniform Police Personnel (25) – 21 Filled
    - 1 Acting Chief of Police
    - 2 Supervisory Police Officers
    - 14 Police Officers (4 in hiring process)
    - 1 School Resource Officer
    - Officers in the academy- 0
    - Officers waiting for training- 1
    - Officers with new starting dates- 0

2. Tribal Uniform Police Personnel
   Tribal Highway Safety- 1

3. Number of Calls for Service – 111

| | |
|---|---|
| Abandoned Vehicle [90Z] | 1 |
| Animals And Wildlife (Non-Resource) [999] | 1 |
| Assist Other Department [999] | 3 |
| Assist to Citizen [999] | 10 |
| Community Policing [999] | 2 |
| Corrections SIR - Aggravated Assault (Inmate-On-Inmate) [99C] | 1 |
| Extra Patrol [999] | 24 |

| | |
|---|---|
| Investigations: Follow-Up [999] | 1 |
| Law Enforcement | 15 |
| Moving, Parking, Equipment, Registration or Licensing Violation | 4 |
| Patrol Log Entry | 1 |
| Persons - Missing (CRITICAL) [999] | 1 |
| Property - Lost/ Missing Government [999] | 2 |
| Security Check [999] | 11 |
| Suspicious Occurrence [99Z] | 12 |
| Suspicious Persons [99Z] | 10 |
| Suspicious Vehicle [99Z] | 7 |
| Unspecified Incident [999] | 1 |
| Welfare Check [999] | 4 |
| **Grand Total** | **111** |

Number of Arrests – 14 (*** Breakdown Type of Arrest by Criminal Charge)

Arrestee 1
| | |
|---|---|
| DWI | 1 |
| Failure to heed | 1 |
| Attempting to elude | 1 |
| Reckless driving | 1 |

Arrestee 2
| | |
|---|---|
| Domestic Violence | 1 |
| Intoxication | 1 |

Arrestee 3
| | |
|---|---|
| Domestic Violence | 1 |
| Intoxication | 1 |

Arrestee 4
| | |
|---|---|
| Intoxication | 1 |

Arrestee 5
Intoxication                                          1


Arrestee 6

DUI                                                  1
Child Endangerment                                   2

Arrestee 7
Intoxication                                          1

Arrestee 8
Drug Abuse- Meth                                     1
Unauthorized use of a motor vehicle                  1
Drug Paraphernalia                                   1
Possession of Liquor                                 1

Arrestee 9
Criminal arrest warrant                              1

Arrestee 10
Intoxication                                          1

Arrestee 11
Intoxication                                          1

Arrestee 12
Drug Abuse- Meth                                     1
Drug Paraphernalia- Meth                             1


Arrestee 13

Intoxication                                          1


Arrestee 14
Intoxication                                          1

4.   Number of Citations - 0

BIA OJS Supervisor (Signature):

HARLEY
WALKER

Digitally signed by HARLEY
WALKER
Date: 2022.03.29 12:19:35
-06'00'

Name of Supervisor

4